FILED

David E. Bower (State Bar No. 119546)
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, California 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
E-Mail: dbower@faruqilaw.com

2012 MAR 23 PM 3: 13

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

MARIO ACQUAVIVA, on Behalf of
Himself and All Others Similarly
Situated,

                    Plaintiff,

        v.

GNC HOLDINGS, INC., GENERAL
NUTRITION CENTERS, INC.,
CELLUCOR SPORTS NUTRITION,
WOODBOLT DISTRIBUTION, LLC,
WOODBOLT DISTRIBUTION, LTD.,
WOODBOLT MANAGEMENT, LLC
and WOODBOLT INTERNATIONAL,

                    Defendants.

Case No.   **CV12-2542**

**CLASS ACTION COMPLAINT**

**I.   Magnuson-Moss Warranty Act**
**II.  Unjust Enrichment**
**III. Breach of Express Warranty**
**IV.  Breach of Implied Warranty of Merchantability**
**V.   California Unfair Competition Laws**
**VI.  California False Advertising Laws**
**VII. California Consumer Legal Remedies Act**
**VIII. NY General Business Law § 349**
**IX.  NY General Business Law § 350**

**JURY TRIAL DEMANDED**

BY FAX

1
CLASS ACTION COMPLAINT

Plaintiff Mario Acquaviva ("Plaintiff") brings this action against GNC Holdings, Inc. ("GNC Holdings"), General Nutrition Centers, Inc. (together with GNC Holdings, "GNC"), Cellucor Sports Nutrition ("Cellucor"), Woodbolt Distribution, LLC, Woodbolt Distribution, Ltd., Woodbolt Management, LLC ("Woodbolt Management") and Woodbolt International (together with Cellucor, Woodbolt Distribution, LLC, Woodbolt Distribution, Ltd. and Woodbolt Management, "Cellucor") (collectively, "Defendants") on behalf of himself and all others similarly situated.  Plaintiff, by his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a class action lawsuit on behalf of purchasers of C-4 Extreme, marketed by Defendants as a pre-workout, mix powdered "dietary supplement" having the "power to ignite your mind, muscles, and workout regiment, workout after workout after workout."  In reality, C-4 Extreme is not a "dietary supplement."  C-4 Extreme has been formulated with a dangerous and synthetic stimulant known as 1, 3-Dimethylamylamine ("DMAA").[1]

2. Defendants marketed DMAA as "a component of geranium."  In fact, the DMAA ingredient is not a component of geranium.  DMAA is a manmade, synthetic substance.

3. Defendants have utilized misleading marketing practices as a means of promoting a product with a so-called natural ingredient, which has enabled

---

[1] DMAA is also known and referred to as 1,3-Dimethylamylamine HCI, 1,3 Dimenthylhexaneamine, Methylhexaneamine, Dimethylpentylamine and Geranamine.

CLASS ACTION COMPLAINT

Defendants to illegally sell C-4 Extreme as a "supplement" and allowed Defendants to circumvent premarketing scrutiny by the Food and Drug Administration ("FDA").

4.     There is a growing international consensus:  DMAA is not a natural extract of geranium, as claimed by supplement manufacturers and sellers like Defendants.  It is actually a synthetic drug with serious, documented health risks.

5.     Plaintiff asserts claims on his own behalf and on behalf of a nationwide class for violations of the Magnuson-Moss Act, 15 U.S.C. § 2301, *et. seq.*, unjust enrichment, breach of express and implied warranties, violations of the California *Consumers Legal Remedies Act* ("CLRA"), Civil Code §§ 1750, *et seq.*, *Unfair Competition Law* ("UCL"), *Business & Professions Code* §§ 17200 *et seq.*, and *False Advertising Law* ("FAL"), *Business & Professions Code* §§ 17500 *et seq.*  Moreover, Plaintiff seeks relief individually and on behalf of a subclass of residents of New York under the false advertising and deceptive acts and practices law of that state.

## PARTIES

6.     Plaintiff Mario Acquaviva ("Plaintiff") is a citizen of New York. Plaintiff purchased and consumed C-4 Extreme from a GNC store in the State of New York for personal, family or household purposes.   The C-4 Extreme product purchased by Plaintiff contained DMAA.  Prior to purchasing C-4 Extreme, Plaintiff read that the ingredient list included DMAA, "a component of geranium."   At the time Plaintiff purchased and used C-4 Extreme he was unaware that DMAA was not a component of geranium, but was a synthetic stimulant with serious, documented health risks.  Mr. Acquaviva would not have purchased C-4 Extreme had he known that it was not a dietary supplement and it contained a synthetic stimulant with serious health risks.

7.     Defendant GNC Holdings is a corporation organized under the laws of the State of Delaware with its principal executive offices at 300 Sixth Avenue, Pittsburgh, Pennsylvania 15222.  GNC Holdings is a holding company that operates

through its subsidiaries.   The company is a large specialty retailer of health and wellness products, including vitamins, minerals, and herbal supplement products, sports nutrition products and diet products, including C-4 Extreme.  GNC Holdings' latest annual report, filed with the Securities and Exchange Commission on February 27, 2012, states that its "network of domestic retail locations is approximately eleven times larger than the next largest U.S. specialty retailer of nutritional supplements and provides a leading platform for [its] vendors to distribute their products to their target consumers."  In addition to its retail locations in all 50 states, GNC Holdings markets and sells products to consumers through its website.  GNC Holdings sells products under GNC proprietary brands as well as third-party brands.  At all relevant times, GNC Holdings has done substantial business in the State of California.

8.   General Nutrition Centers, Inc. is an indirect wholly owned operating subsidiary of GNC Holdings.  It is a corporation organized under the laws of the State of Delaware with its principal executive offices at 300 Sixth Avenue, Pittsburgh, Pennsylvania 15222.   General Nutrition Centers, Inc. is a retailer of health and wellness products, including vitamins, minerals, and herbal supplement products, sports nutrition products and diet products, including C-4 Extreme.  At all relevant times, General Nutrition Centers, Inc. has done substantial business in the State of California.

9.   Defendant Cellucor is located at 715 North Main Street, Bryan, Texas 77803-3327.   Cellucor develops, manufactures, sells, promotes, markets and distributes dietary supplements, including C-4 Extreme.   At all relevant times, Cellucor has done substantial business in the State of California.

10.   Defendant Woodbolt Distribution, LLC is a limited liability company organized and existing under the laws of the State of Texas, with its principle executive offices at 715 North Main Street, Bryan, Texas 77803-3327.  It develops, manufactures, promotes, markets, sells and distributes dietary supplements, including

CLASS ACTION COMPLAINT

C-4 Extreme.  At all relevant times, Woodbolt Distribution, LLC has done substantial business in the State of California.

11.     Defendant Woodbolt Distribution, Ltd. is a domestic limited partnership organized and existing under the laws of the State of Texas, with its principle executive offices at 715 North Main Street, Bryan, Texas 77803-3327.  It develops, manufactures, promotes, markets, sells and distributes dietary supplements, including C-4 Extreme.  At all relevant times, Woodbolt Distribution, Ltd. has done substantial business in the State of California.

12.     Defendant Woodbolt Management is a limited liability company organized and existing under the laws of the State of Texas, with its principle executive offices at 715 North Main Street, Bryan, Texas 77803-3327.  It is the general partner of Woodbolt Distribution, Ltd.  It develops, manufactures, promotes, markets, sells and distributes dietary supplements, including C-4 Extreme.  At all relevant times, Woodbolt Management has done substantial business in the State of California.

13.     Defendant Woodbolt International is located at 715 North Main Street, Bryan, Texas 77803-3327 and is identified on the product package as the distributor of C-4 Extreme.  Woodbolt International distributes Cellucor products such as C-4 Extreme to thousands of retail locations.   At all relevant times, Woodbolt International has done substantial business in the State of California.

1.     At all relevant times, each of the Defendants were engaged in the development, design, manufacture, production, testing, study, inspection mixture, labeling, marketing, advertising, sale, promotion and/or distribution of C-4 Extreme, which they falsely promoted as a "dietary supplement."

CLASS ACTION COMPLAINT

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question).  This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

15.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and Plaintiff, as well as most members of the proposed class, is a citizen of a state different from Defendants.

16.     Venue is proper in this Court under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claim occurred within this District and because the Defendants are subject to personal jurisdiction in this district.

### Facts Common to All Causes of Action

### False and Misleading Marketing of C-4 Extreme

17.     In early 2011, Defendants launched C-4 Extreme into the highly competitive supplement market.  C-4 Extreme products are pre-workout "boosters" marketed as "dietary supplements," which sell in retail stores across the country and via the web for approximately $29.99 per 30 dose unit.  C-4 Extreme comes in various flavors, including Fruit Punch, Orange and Icy Blue Razz.

18.     The workout supplement market is a multi-million dollar industry.  As stated in Cellucor's promotional materials on the Bodybuilding.com website, "the supplement universe has a war of its own; countless brands employ relentless advertising and promotional campaigns to announce that their product delivers the most energy. . . . [C]ustomers routinely admit they stray from brand to brand, product to product, to try and find a better solution . . . ."  To grow its market share, Cellucor has tried to distinguish itself from the pack by claiming "unparalleled label

CLASS ACTION COMPLAINT

transparency." Cellucor asserts that it "has set another industry first by drastically improving label transparency. . . . Cellucor has clearly labeled all key ingredient dosages – no more confusing proprietary blends, no more wondering what you're actually taking."

19.    In reality, the labels on C-4 Extreme have not been truthful. Defendants have promoted, marketed, distributed and sold C-4 Extreme as a "dietary supplement" and the labels on C-4 Extreme have claimed the ingredient DMAA is "a component of geranium." These statements are calculated to mislead consumers into believing that DMAA is a natural substance derived from the geranium plant when, in fact, DMAA is a synthetic stimulant with serious, documented health risks, including headache, nausea, vomiting, increased blood pressure, kidney and liver failure, seizures, loss of consciousness, stroke and even death.

20.    Cellucor's website states that "[e]ach and every unit [sold under the Cellucor brand] undergoes strenuous quality testing to ensure potency, consistency, and most important, safety. . . . [S]cience serves as the foundation for our success." In fact, Cellucor has misrepresented the safety and legality of C-4 Extreme and its ingredient DMAA and Cellucor's statements concerning C-4 Extreme and DMAA are unsupported by reliable scientific research studies.

21.    On February 23, 2012, Cellucor announced that C-4 Extreme was a "Top 10" product at Bodybuilding.com. *See* http://www.prweb.com/releases/2012/2/prweb9223655.htm.

22.    Defendants' marketing and advertising of C-4 Extreme has falsely represented that C-4 Extreme is a "dietary supplement" and that DMAA is "a component of geranium." These statements are false and deceptive. DMAA is not a dietary ingredient and is not a component of geranium. It is a synthetic stimulant with serious, documented health risks.

23. On February 17, 2011, bodybuildingsupplementinformation.com posted that Cellucor had removed DMAA from C-4 Extreme. *See* http://bodybuildingsupplementinformation.com/2011/02/cellucor-c4/. Nonetheless, C-4 Extreme containing DMAA continues to be sold by both Cellucor and GNC.

24. A comparison of the before and after labels reveals the new ingredient Synephrine HCL and shows that caffeine anhydrous has been increased from 100mg per scoop to 135mg per scoop:




25. Importantly, the new ingredient Synephrine HCL is believed to be a synthetic stimulant with properties and health risks similar to DMAA. Accordingly, this change in formula has not corrected the misrepresentations to consumers identified in this Complaint.

## Medical Studies Show That DMAA Is A
## Synthetic Stimulant With Known Health Risks

26.    Medical studies show that DMAA is not a component of geranium.  In fact, DMAA is a synthetic substance.  Accordingly, C-4 Extreme is not a "dietary supplement" as defined by applicable law and Defendants' marketing of C-4 Extreme as a dietary supplement is false and misleading.

27.    Eli Lilly & Company, the pharmaceutical company, originally developed DMAA in the 1940s as a nasal decongestant called "Forthane."

28.    It was not until 2006 that DMAA was first marketed as a "dietary supplement."  As reported the by Washington Post:

> An Illinois chemist awaiting sentencing for his role in the biggest steroid scandal in U.S. history has for months been involved in marketing a dietary supplement containing a little-known amphetamine-like substance that would be undetectable in current sports drug tests, according to an analysis of the product for The Post.
>
> Patrick Arnold, who in a recent plea deal admitted providing steroids to the drug ring that ensnared Barry Bonds and a number of other famous athletes, runs a company that has been selling the amphetamine-like compound over the Internet in a dietary supplement that describes the substance with the invented trademark name Geranamine.

*See* http://www.washingtonpost.com/wp-dyn/content/article/2006/05/07/AR2006050700913.html.

29.    The weight of the evidence shows that DMAA is not a natural component of the geranium plant.  Rather, DMAA is a synthetic substance that was developed in the 1940s.

30.    Health Canada, the department of the Canadian government responsible for national public health, discredited an analysis done by Chinese researchers in

CLASS ACTION COMPLAINT

1996 which reportedly identified DMAA as a constituent of geranium oil.[2]  Health Canada noted errors in the Chinese study and that at least seven other research papers had failed to identify DMAA in geranium oil.  As a consequence, "[i]n a classification of DMAA dated July 7, 2011, by the Natural Health Product Directorate ("NHPD") and Therapeutic Products Directorate ("TPD"), Health Canada has announced that products containing the DMAA must now be authorized as drugs." http://www.nutraingredients-usa.com/Industry/Health-Canada-DMAA-is-not-from-geranium.

31.     The Chinese study dismissed by Health Canada was similarly discredited in a recent scientific study, which concluded that geranium oils do not contain DMAA and that products labeled as containing DMAA contain a synthetic material.  *See* Lisi, A., Hasick, N., Kazlauskas, R. & Goebel, C., *Studies of Methylhexaneamine in Supplements and Geranium Oil*, Drug Test Analysis, 3: 873–76 (2011).  This DMAA study posits that the 1996 Chinese study was either incorrect or incorrectly translated, *id.* at 875, and states that the use of the name Geranamine for the compound when it was first marketed as a dietary supplement in 2006 appears to have been a "marketing ploy."

32.     Laboratories at NSF International, an independent, not-for-profit organization that provides standards development, product certification, auditing and other public health services, have conducted their own testing of geranium oil down to a parts per billion screen and found that geranium does not contain DMAA.  *See* http://www.nutraingredients-usa.com/Industry/NSF-MHA-not-a-constituent-of-geranium-oil.  Edward Wyszumiala, the general manager of dietary supplement programs at NSF International, has described DMAA as a stimulant similar to

---

[2] Ping, Z., Jun. Q. & Quing, L., *A Study on the Chemical Constituents of Geranium Oil*, Journal of Guizhou Institute of Technology (1996, Vol. 25, pp. 82-85).

1  amphetamine.   *See*   http://www.nytimes.com/2012/02/03/business/army-studies-
2  workout-supplements-after-2-deaths.html.

3      33.    The American Herbal Products Association ("AHPA") is a national trade
4  association    focused    on    the    herbal    products    market.    *See*
5  http://www.ahpa.org/Default.aspx?tabid=150.   Last year, at the suggestion of the
6  AHPA Sports Nutrition Committee, the AHPA Board of Trustees approved a motion
7  to create a new trade requirement for labeling of DMAA, which effectively prohibits
8  members from labeling DMAA as any part of the geranium plant.   "The committee
9  initiated the request due to [DMAA] being listed on product labels as derived from
10 'geranium oil' or other parts of the plant, despite inconclusive evidence that the
11 constituent      is      found      in      the      species."
12 http://www.ahpa.org/Default.aspx?tabid=69&aId=687&zId=1.   The language of the
13 motion is available on AHPA's website:

14      **MOTION** to establish a trade requirement that AHPA members do not
15      label1,3-dimethylpentylamine, whether identified by this name or any
16      synonym, as geranium oil or as any part of the geranium plant, whether
17      by the common name of geranium or by the botanical name of any plant
18      known as geranium; except that, nothing in this policy prevents labeling
19      of any compound that is in fact derived from geranium plant materials
20      by that compound's common or usual name.

21      34.    Experts have noted that DMAA has a chemical structure similar to
22 amphetamine.   Dr. Pieter Cohen, an assistant professor of medicine at Harvard
23 Medical School and internist at the Cambridge Health Alliance who has studied
24 tainted dietary supplements, told the New York Times in reference to so-called
25 dietary supplements containing DMAA: "Unfortunately, what we have now is
26 pharmacological   levels   of   an   amphetamine   derivative   easily   available."

27

28

1  http://www.nytimes.com/2012/02/03/business/army-studies-workout-supplements-

2  after-2-deaths.html.

3     35.   Negative health effects associated with DMAA have been well-

4  documented.  DMAA may cause symptoms including headache, nausea, vomiting,

5  increased blood pressure, stroke and even death.  In the wake of these concerns,

6  DMAA   has   effectively   been   banned   in   New   Zealand.   *See*

7  http://www.3news.co.nz/DMAA-latest-party-pill-substance-to-get-

8  ban/tabid/423/articleID/245691/Default.aspx.

9     36.   The United States military "has logged cases of kidney and liver failure,

10  seizures, loss of consciousness, heat injury and muscle breakdown that might be

11  connected to DMAA . . . . After two soldiers [suffered heart attacks and] died while

12  training last year and autopsies revealed the substance in their bodies, products with

13  DMAA were removed from exchange stores at military bases around the world . . . ."

14  http://www.stripes.com/news/soldiers-to-be-subjects-as-army-studies-whether-dmaa-

15  is-dangerous-1.170432;   *see   also*   http://www.stripes.com/news/army-probing-

16  connection-between-body-building-supplement-2-deaths-1.163652.

17     37.   Some sports organizations including the World Anti-Doping Agency, the

18  foundation that monitors the World Anti-Doping Code, and several professional

19  sports leagues have listed DMAA as a banned stimulant.

20  **Defendants Illegally Marketed C-4 Extreme As A "Dietary Supplement"**

21     38.   The Dietary Supplement Health and Education Act ("DSHEA") of 1994

22  amended the Food Drug and Cosmetics Act ("FDCA") to establish a new regulatory

23  framework for dietary supplements.  Under DSHEA, a "dietary supplement" is a

24  product (other than tobacco) that:

25          a.   is intended to supplement the diet;

26          b.   contains one or more "dietary ingredients" (defined to include

27               vitamins, minerals, herbs or other botanicals, amino acids, and

28

substances such as enzymes, organ tissues, glandulars, and metabolites) or their constituents;

    c.    is intended to be taken by mouth as a pill, capsule, tablet, or liquid; and

    d.    is labeled on the front panel as being a dietary supplement.

*See* 21 U.S.C. § 321(ff).

39.    A synthetic copy of a constituent of a botanical was never part of the botanical and thus cannot be a "constituent" of the botanical that qualifies as a dietary ingredient under DSHEA.  *See* Draft Guidance for Industry: Dietary Supplements: New Dietary Ingredient Notifications and Related Issues at IV.D.2 (July 2011).

40.    DSHEA specifically excludes from the definition of "dietary supplement" an article authorized for investigation as a new drug for which substantial clinical investigations were instituted and made public prior to such article being marketed as a dietary supplement.  *See* 21 U.S.C. § 321(ff)(3)(B)(ii).

41.    Under DSHEA, manufacturers and distributers are responsible for ensuring that their dietary supplements are safe and that any representations or claims about them are substantiated by adequate evidence to show that they are not false or misleading.

42.    Unlike drugs, dietary supplements do not require approval from FDA before they are marketed.  However, there is an important exception to the autonomy that marketers and distributers of dietary supplements enjoy in initially putting their products on retail shelves: any supplements containing a "new dietary ingredient" are subject to a pre-marketing notification requirement.

43.    A "new dietary ingredient" is "a dietary ingredient that was not marketed in the United States before October 15, 1994."  *See* 21 U.S.C. § 350b(d).

44.    Accordingly, dietary ingredients that were marketed as dietary supplements in the United States prior to October 15, 1994 may be used in dietary

supplements without notifying the FDA.   But DSHEA provides that a manufacturer or distributor of a "new dietary ingredient" or a dietary supplement that contains a "new dietary ingredient" must submit a premarket notification to FDA at least 75 days prior to introducing (or delivering for introduction) the supplement into interstate commerce, unless the new dietary ingredient has "been present in the food supply as an article used for food in a form in which the food has not been chemically altered." *See* 21 U.S.C. § 350b(a); *see also* 21 CFR 190.6.  The notification must contain the information which is the basis on which the manufacturer or distributor has concluded that the dietary supplement containing the new dietary ingredient will reasonably be expected to be safe.  *See* 21 U.S.C. § 350b(a); *see also* 21 CFR 190.6(b)(4).

45.    Importantly, if the required premarket notification is not submitted to the FDA, the dietary supplement containing the new dietary ingredient is deemed to be "adulterated" and unlawfully marketed under the FDCA.  *See* 21 U.S.C. §§ 342(f), 350b(a).  Moreover, even if the notification is submitted as required, the dietary supplement containing the new dietary ingredient is adulterated unless there is a history of use or other evidence of safety establishing that the new dietary ingredient, when used under the conditions recommended or suggested in the labeling of the dietary supplement, will reasonably be expected to be safe.  *See* 21 U.S.C. §§ 342(f).

46.    Defendants have marketed and sold C-4 Extreme in violation of the FDCA.  DMAA is not a dietary ingredient because it is not a concentrate, metabolite, constituent, extracts, or combination of any vitamin, mineral, amino acid, herb or other botanical, amino acid, or substance such as an enzyme, organ tissue, glandular, or metabolite.  *See* 21 U.S.C. § 321(ff)(1).  Rather, DMAA is a synthetic stimulant.  Accordingly, C-4 Extreme containing DMAA cannot be sold as a dietary supplement pursuant to the FDCA.  *See* 21 U.S.C. § 321(ff).

47.   Even if C-4 Extreme could qualify as a "dietary supplement," it is an "adulterated" dietary supplement and is illegally on the market.   C-4 Extreme is "adulterated" for the reasons below.

a.   First, assuming DMAA was a "dietary ingredient," it would be a "new dietary ingredient" because DMAA was not marketed in the United States as a dietary ingredient prior to October 15, 1994. *See* 21 U.S.C. § 350b(d).   Nor was DMAA "present in the food supply as an article used for food in a form in which the food has not been chemically altered."   *See* 21 U.S.C. § 350b(a).   Thus, Defendants were required to provide FDA with premarket notification at least 75 days prior to introducing (or delivering for introduction) C-4 Extreme into interstate commerce.   *See id.* Defendants did not submit a "new dietary ingredient" notification to the FDA at least seventy-five days prior to the first sale of C-4 Extreme as required by DSHEA and, therefore, C-4 Extreme is deemed to be adulterated.   *See* 21 U.S.C. § 350b(a)

b.   Second, assuming DMAA was a "dietary ingredient," it would be a "new "dietary ingredient" for which there is inadequate information to provide reasonable assurance that it does not present a significant or unreasonable risk of illness or injury. There is no history of use or other evidence of safety establishing that C-4 Extreme, when used under the conditions recommended or suggested in its labeling, will reasonably be expected to be safe. On the contrary, C-4 Extreme presents a significant and unreasonable risk of illness or injury under the conditions of use recommended or suggested in its labeling and under ordinary conditions of use.   *See* 21 U.S.C. § 342(f).

48.     By misrepresenting DMAA as a natural component of geranium, Defendants have misled consumers.

## CLASS ACTION ALLEGATIONS

49.     Plaintiff brings this action on behalf of himself and all other similarly situated persons pursuant to Rule 23 of the *Federal Rules of Civil Procedure*.

50.     Plaintiff seeks to represent a Class defined as all persons in the United States who, within the relevant statute of limitations period, purchased C-4 Extreme (the "Class").    Excluded from the Class are persons or entities that purchased C-4 Extreme for resale, Defendants and their subsidiaries and affiliates.

51.     Plaintiff further seeks to represent a subclass defined as all Class members who are New York residents or who purchased C-4 Extreme in New York (hereafter, the "New York  Subclass").

52.     Plaintiff reserves the right to amend or modify the Class definition with greater specificity or further division into subclasses or limitation to particular issues as discovery and the orders of this Court warrant.

53.     Members of the Class and New York Subclass are so numerous that joinder of all members is impracticable.  While the exact number of Class members is presently unknown, and can only be ascertained through appropriate discovery, Plaintiff believes the members of the Class number in the tens of thousands.

54.     Common questions of law and fact exist as to all members of the Class and New York Subclass and predominate over any questions solely affecting individual members of the Class and New York Subclass.  Among questions of law and fact common to the Class and New York Subclass are:

        a.     Whether Defendants' marketing, advertising, packaging, labeling and other promotional materials concerning C-4 Extreme and DMAA were deceptive;

b.   Whether Defendants knew their claims concerning C-4 Extreme and DMAA were false and/or misleading;

c.   Whether Defendants breached express and/or implied warranties by making the representations above;

d.   Whether Defendants have been unjustly enriched as a result of their unlawful business practices;

e.   Whether Defendants actions as described above violated the Magnuson-Moss Act, 15 U.S.C. § 201, *et seq.*,

f.   Whether Defendants' actions as described above violate the California *Unfair Competition Law*, California *Business & Professions Code* §§ 17200, *et seq.*;

g.   Whether Defendants' actions as described above violate the California *False Advertising Law*, California *Business & Professions Code* §§ 17500, *et seq.*;

h.   Whether Defendants' actions as described above violate the California *Consumers Legal Remedies Act*, California *Civil Code* §§ 1750, *et. seq.*;

i.   Whether Defendants' actions as described above violated New York General Business Law, §§ 349 and 350;

j.   Whether Defendants should be enjoined from continuing the above-described practices;

k.   Whether Plaintiff and members of the Class are entitled to declaratory relief; and

l.   Whether Defendants should be required to make restitution, disgorge profits, reimburse losses, pay damages and pay treble damages as a result of the above described practices.

55.    Plaintiff's claims are typical of the claims of Class and New York Subclass members because Plaintiff and each member of the Class purchased C-4 Extreme and suffered a loss of money as a result of that purchase.

56.    Plaintiff is an adequate representative of the Class and New York Subclass because his interests do not conflict with the interests of the Class and New York Subclass members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously.   The interests of Class and New York Subclass members will be fairly and adequately protected by Plaintiff and his counsel.

57.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.   Furthermore, as the damages suffered by the individual members of the Class and New York Subclass may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class and New York Subclass to individually redress the wrongs done to them.   There will be no difficulty in the management of this class action.

**COUNT I**

**VIOLATION OF MAGNUSON-MOSS WARRANTY ACT**

**(15 U.S.C. § 2301, *et seq.*)**

58.    Plaintiff and Class members reallege and incorporate by reference each allegation set forth above and further allege as follows.

59.    Plaintiff brings this Count I individually and on behalf of the members of the Class against all Defendants.

60.    C-4 Extreme is a consumer product as defined in 15 U.S.C. § 2301(1).

61.    Plaintiff and Class members are consumers as defined in 15 U.S.C. § 2301(3).

62.     Defendants are suppliers and warrantors as defined in 15 U.S.C. § 2301(4) and (5).

63.     In connection with the sale of C-4 Extreme, Defendants issued written warranties as defined in 15 U.S.C. § 2301(6), which warranted that C-4 Extreme is a "dietary supplement" and that DMAA is "a component of geranium."   These statements are untrue as detailed above.

64.     By reason of Defendants' breach of the express written warranties stating that C-4 Extreme is a "dietary supplement" and that DMAA is "a component of geranium," Defendants violated the statutory rights due Plaintiff and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, thereby damaging Plaintiff and Class members.

## COUNT II

## UNJUST ENRICHMENT

65.     Plaintiff and Class members reallege and incorporate by reference each allegation set forth above and further allege as follows.

66.     Plaintiff brings this Count II individually and on behalf of the members of the Class against all Defendants.

67.     "The unjust enrichment claim can be made from common classwide proof." *Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 239 (C.D. Cal. 2003) (certifying a nationwide class where plaintiffs alleged defendants were unjustly enriched through a common scheme.).   "Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences.   In all states, the focus of an unjust enrichment claim is whether the defendant was *unjustly* enriched.   At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff.   The focus of the inquiry is the same in each state." *In re Mercedes-Benz*

1 | *Tele Aid Contract Litig.*, 257 F.R.D. 46, 58 (D.N.J. Apr. 24, 2009), *quoting Powers v.*
2 | *Lycoming Engines*, 245 F.R.D. 226, 231 (E.D. Pa. 2007).

3 |     68.   Plaintiff and Class members conferred a benefit on Defendants by
4 | purchasing C-4 Extreme.

5 |     69.   Defendants have been unjustly enriched in retaining the revenues
6 | derived from Class members' purchases of C-4 Extreme, which retention under these
7 | circumstances is unjust and inequitable because Defendants misrepresented the facts
8 | concerning the safety and legality of the product and caused Plaintiff and the Class to
9 | lose money as a result thereof.

10 |     70.   Plaintiff and Class members suffered a loss of money as a result of
11 | Defendants' unjust enrichment because: (a) they would not have purchased C-4
12 | Extreme on the same terms if the true facts concerning C-4 Extreme had been known;
13 | and (b) they paid a price premium due to the false representations about C-4 Extreme.

14 |     71.   Because Defendants' retention of the non-gratuitous benefit conferred on
15 | them by Plaintiff and Class members is unjust and inequitable, Defendants must pay
16 | restitution to Plaintiff and Class members for their unjust enrichment, as ordered by
17 | the Court.

## COUNT III

## BREACH OF EXPRESS WARRANTY

20 |     72.   Plaintiff and Class members reallege and incorporate by reference each
21 | allegation set forth above and further allege as follows.

22 |     73.   Plaintiff brings this Count III individually and on behalf of the members
23 | of the Class against all Defendants.

24 |     74.   Defendants expressly warranted in their marketing, advertising and
25 | promotion of C-4 Extreme that C-4 Extreme is a "dietary supplement" and that
26 | DMAA is "a component of geranium."   These statements are untrue as detailed
27 | above.

75.    Plaintiff and members of the Class purchased C-4 Extreme based upon the above said express warranty.

76.    Defendants breached their express warranty by selling a product containing DMAA, a synthetic stimulant with serious, documented health risks.

77.    Plaintiff and the Class were injured as a direct and proximate result of Defendants' breach because:  (a) they would not have purchased C-4 Extreme on the same terms if the true facts concerning C-4 Extreme were known; (b) they paid a price premium for C-4 Extreme; and (c) C-4 Extreme did not have the quality or value as promised.

## COUNT IV

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

78.    Plaintiff and Class members reallege and incorporate by reference each allegation set forth above and further allege as follows.

79.    Plaintiff brings this Count IV individually and on behalf of the members of the Class under California law.

80.    Defendant's C-4 Extreme was accompanied by an implied warranty of merchantability when sold, pursuant to California Civil Code § 1792.

81.    California Civil Code § 1791.l(a) states in relevant part: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

        a.    Pass without objection in the trade under the contract description.

        b.    Are fit for the ordinary purposes for which such goods are used.

        c.    Are adequately contained, packaged, and labeled.

        d.    Conform to the promises or affirmations of fact made on the container or label.

82.    C-4 Extreme, which is the subject of this Complaint, would not pass without objection in the dietary supplement trade.

21
CLASS ACTION COMPLAINT

83.     C-4 Extreme is not fit for the ordinary purpose for which it was sold.  C-4 Extreme was purchased to, among other things, provide a safe, legal and enhanced workout experience.  In fact, C-4 Extreme was formulated with DMAA, a synthetic stimulant with serious, documented health risks.

84.     C-4 Extreme was not adequately labeled nor did it conform to the promises or affirmations of fact made on the container or label because the labeling misrepresented that C-4 Extreme was a dietary supplement containing a component of geranium, and failed to disclose that C-4 Extreme instead contained a synthetic stimulant with serious, documented health risks.

85.     Had Plaintiff and the members of the Class known the true facts, they either would not have purchased C-4 Extreme or would not have been willing to pay the premium price Defendants charged for C-4 Extreme.

86.     As a result of Defendant's unlawful conduct, Plaintiff and the members of the Class have suffered and will continue to suffer damages.

87.     Plaintiff seeks injunctive relief pursuant to California Civil Code § 1794.

88.     Plaintiff also seeks an award of attorneys' fees and costs under California Civil Code § 1794.

**COUNT V**

**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**

**(Bus. & Prof. Code §§ 17200, *et seq.*)**

**(Injunctive Relief and Restitution Only)**

89.     Plaintiff and Class members reallege and incorporate by reference each allegation set forth above and further allege as follows.

90.     This Count V is asserted by Plaintiff on behalf of the Class under California law.

91.     Defendants are subject to the Unfair Competition Law ("UCL"), *Business & Professions Code* §§ 17200, *et seq.*  The UCL provides, in pertinent part:

CLASS ACTION COMPLAINT

"Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …." The UCL also provides for injunctive relief and restitution for violations.

92.    Defendants violated the "unlawful" prong of the UCL by violating California's *Consumers Legal Remedies Act* ("CLRA") as described in Count VII, below.

93.    Defendants also violated the "unlawful" prong of the UCL by violating California's *False Advertising Law* ("FAL") as described in Count VI, below.

94.    Defendants' conduct, described herein, violated the "unfair" prong of the UCL by using false and misleading statements to promote the sale of C-4 Extreme, as described above.

95.    Defendants' conduct is unfair in that the harm to Plaintiff and the Class arising from Defendants' conduct outweighs the utility, if any, of those practices.

96.    Defendants' conduct, described herein, violated the "fraudulent" prong of the UCL by misrepresenting that C-4 Extreme is a "dietary supplement," by falsely characterizing DMAA as "a component of geranium," and by providing false information about the safety and legality of C-4 Extreme.

97.    Plaintiff and members of the Class suffered lost money or property as a result of Defendants' UCL violations because:  (a) they would not have purchased C-4 Extreme on the same terms if the true facts concerning C-4 Extreme had been known; and (b) they paid a price premium due to the false representations about C-4 Extreme.

## COUNT VI

## FOR VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW ("FAL")

### (Bus. & Prof. Code §§ 17500 *et seq.*)

98.   Plaintiff and Class members reallege and incorporate by reference each allegation set forth above and further allege as follows.

99.   This Count VI is asserted by Plaintiff on behalf of the Class under California law.

100.   California's False Advertising law (Bus. & Prof. Code §§ 17500, *et seq.*) makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

101.   Defendants committed acts of false advertising, as defined by § 17500, by using false and misleading statements to promote the sale of C-4 Extreme, as described above.

102.   Defendants' misleading and false advertisements were disseminated to increase sales of C-4 Extreme.

103.   Defendants knew or should have known, through the exercise of reasonable care that the statements were untrue and misleading.

104.   Defendants' actions in violation of § 17500 were false and misleading such that the general public is and was likely to be deceived.

105.   As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiff brings this action pursuant to § 17535 for injunctive relief to enjoin the practices described herein, to require Defendants to issue corrective

1   disclosures to consumers, and for restitution for all monies wrongfully obtained and

2   disgorgement of all ill-gotten revenues and/or profits.

3   **COUNT VII**

4   **VIOLATION OF CALIFORNIA'S CONSUMER**

5   **LEGAL REMEDIES ACT ("CLRA")**

6   **(Civil Code §§ 1750, *et. seq.*)**

7       106.   Plaintiff and Class members reallege and incorporate by reference each

8   allegation set forth above and further allege as follows.

9       107.   This Count VII is asserted by Plaintiff on behalf of the Class under

10  California law.

11      108.   C-4 Extreme is a "good" as that term is defined in California Civil Code

12  § 1761(a).

13      109.   Defendants are "persons" as that term is defined in California Civil Code

14  § 1761(c).

15      110.   Plaintiff's purchases of C-4 Extreme constituted "transactions" as that

16  term is defined in California Civil Code § 1761(e).

17      111.   The policies, acts, and practices described in this Complaint were

18  intended to and did result in the sale of C-4 Extreme to Plaintiff and the Class.

19  Defendants' practices, acts, policies, and course of conduct violated the CLRA, in

20  that, as described above:

21          a.   Defendants represented that C-4 Extreme has sponsorship,

22              approval, characteristics, ingredients, uses, benefits, or quantities

23              which it does not have in violation of California Civil Code

24              § 1770(a)(5);

25          b.   Defendants represented that C-4 Extreme was of a particular

26              standard or quality, when Defendants were aware that it was of

27              another in violation of California Civil Code § 1770(a)(7); and

28

25
CLASS ACTION COMPLAINT

c.      Defendants advertised C-4 Extreme with intent not to sell it as advertised in violation of California Civil Code § 1770(a)(9).

112.   Plaintiff and Class members suffered injuries caused by Defendants' misrepresentations because: (i) they were induced to purchase a product they would not have otherwise purchased if they knew C-4 Extreme was not a dietary supplement containing a component of geranium, but instead is a substance containing a synthetic stimulant with serious, documented health risks; and (ii) Plaintiff and the Class were induced to pay substantially more for C-4 Extreme than they would have paid if its true characteristics had not been concealed or misrepresented.

113.   On March 22, 2012, prior to the filing of this Complaint, a CLRA notice letter was served on Defendants which complies in all respects with California *Civil Code* § 1782(a).  Plaintiff sent Defendants a letter *via* certified mail, return receipt requested, advising Defendants that they are in violation of the CLRA and must correct, repair, replace or otherwise rectify the goods alleged to be in violation of § 1770.  Defendants were further advised that in the event that the relief requested has not been provided within thirty (30) days, Plaintiff would amend his Complaint to include a request for monetary damages pursuant to the CLRA.

114.   Wherefore, Plaintiff seeks restitution and injunctive relief for violations of the CLRA.

## COUNT VIII

## VIOLATION OF N.Y. GEN. BUS. LAW § 349

115.   Plaintiff and Class members reallege and incorporate by reference each allegation set forth above and further allege as follows.

116.   This Count VIII is asserted by Plaintiff on behalf of the New York Subclass under New York law.

117.   Defendants engaged in a false and misleading marketing and advertising claim, representing that C-4 Extreme is a "dietary supplement" and that DMAA is "a component of geranium."  These statements are untrue as detailed above.

118.   As set forth above, by advertising, marketing, distributing and/or selling C-4 Extreme to Plaintiff and the New York Subclass, Defendants engaged in, and continue to engage in, deceptive acts and practices.

119.   Plaintiff and other members of the New York Subclass further seek to enjoin such unlawful deceptive acts and practices as described above.  Each of the members of the New York Subclass will be irreparably harmed unless the unlawful actions of Defendants are enjoined in that Defendants will continue to falsely and misleadingly advertise that C-4 Extreme is a "dietary supplement" and that DMAA is "a component of geranium."  Therefore, Plaintiff and the New York Subclass request an order granting them injunctive relief ordering appropriate labeling and disclosures in the advertising, marketing and promotion of C-4 Extreme.

120.   Absent such injunctive relief, Defendants will continue to falsely advertise, market and sell C-4 Extreme as a "dietary supplement" and DMAA as "a component of geranium" to the detriment of consumers.

121.   In this regard, Defendants have violated, and continue to violate, N.Y. Gen. Bus. Law § 349, which makes deceptive acts and practices unlawful.  As a direct and proximate result of Defendants' violation of N.Y. Gen. Bus. Law. § 349 as alleged above, Plaintiff and other members of the New York Subclass have suffered damages.

### COUNT IX
### VIOLATION OF N.Y. GEN. BUS. LAW § 350

122.   Plaintiff and Class members reallege and incorporate by reference each allegation set forth above and further allege as follows.

123. This Count IX is asserted by Plaintiff on behalf of the New York Subclass under New York law.

124. Defendants engaged in a false and misleading marketing and advertising, representing that C-4 Extreme is a "dietary supplement" and that DMAA is "a component of geranium," when in fact C-4 Extreme is not a dietary supplement and DMAA is a synthetic stimulant with serious health risks.

125. N.Y. Gen. Bus. Law § 350-a defines "false advertising" as "advertising, including, labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect."

126. As set for above, by advertising, marketing, distributing and/or selling C-4 Extreme to Plaintiff and the New York Subclass, Defendants engaged in, and continue to engage in, false advertising.

127. Plaintiff and other members of the New York Subclass further seek to enjoin such false advertising as described above. Each of the members of the New York Subclass will be irreparably harmed unless the unlawful actions of Defendants are enjoined in that Defendants will continue to falsely and misleadingly advertise and market that C-4 Extreme is a "dietary supplement" and that DMAA is "a component of geranium." Therefore, Plaintiff and the New York Subclass request an order granting them injunctive relief ordering appropriate disclosures and/or disclaimers in the advertising, marketing and promotion of C-4 Extreme.

128. Absent such injunctive relief, Defendants will continue to advertise, market and sell C-4 Extreme as a "dietary supplement" and DMAA as "a component of geranium" to the detriment of consumers.

129. In this regard, Defendants have violated, and continue to violate, N.Y. Gen. Bus. Law § 350, which makes deceptive acts and practices unlawful. As a direct and proximate result of Defendants' violation of N.Y. Gen. Bus. Law § 350 as

alleged above, Plaintiff and other members of the New York Subclass have suffered damages.

## PRAYER FOR RELIEF

Plaintiff, on his own behalf and on behalf of the Class, prays for the following relief:

A.  For an order certifying the nationwide Class and the New York Subclass under Rule 23 of the *Federal Rules of Civil Procedure* and naming Plaintiff as Class Representatives and his attorneys as Class Counsel to represent the Class members;

B.  For an order declaring that Defendants' conduct violates the statutes referenced herein;

C.  For an order finding in favor of Plaintiff, the Class and the New York Subclass on all counts asserted herein;

D.  For an order awarding compensatory, treble, and punitive damages in amounts to be determined by the Court and/or jury;

E.  For prejudgment interest on all amounts awarded;

F.  For an order of restitution and all other forms of equitable monetary relief;

G.  For injunctive relief as pleaded or as the Court may deem proper; and

H.  For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## JURY DEMAND

Plaintiff demands trial by jury on all issues herein stated.

Dated:  March 22, 2012

FARUQI & FARUQI, LLP

By:_____
David E. Bower (State Bar No. 119546)
*Attorneys for Plaintiff*

I, Mario Acquaviva, declare as follows:

1.     I am a plaintiff in this action and a citizen of the State of New York.  I have personal knowledge of the facts herein and if called as a witness, I could and would testify competently thereto.

2.     This is a proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the transaction alleged occurred in the Central District of California because the defendants, General Nutrition Centers, Inc. ("GNC"), Cellucor Sports Nutrition, Woodbolt Distribution, LLC, Woodbolt Management, LLC and Woodbolt International (collectively "Defendants") do business in this District.

3.     I read Defendants' label on the outside of C-4 Extreme and read about the product on Defendants' websites.  I purchased C-4 Extreme at a GNC store in New York County, New York after reading that C-4 Extreme is a pre-workout "dietary supplement."  Moreover, prior to my purchase, I read that the ingredient list for C-4 Extreme included 1, 3-Dimethylamylamine ("DMAA"), "a component of geranium."   The product label and advertising claims were a substantial factor influencing my decision to purchase C-4 Extreme. At the time of my purchase, I did not know that DMAA was not a component of geranium, but was a synthetic stimulant with serious health risks.   I would not have purchased C-4 Extreme if I had known that it was a drug containing DMAA, a synthetic stimulant with serious, documented health risks.

4.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed in Staten Island, New York this 20th day of March, 2012.

_____
Mario Acquaviva

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Margaret M. Morrow and the assigned discovery Magistrate Judge is Frederick F. Mumm.

The case number on all documents filed with the Court should read as follows:

## CV12- 2542 MMM (FFMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

========================================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division** | **[ ] Southern Division** | **[ ] Eastern Division** |
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)   NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Name & Address:  David E. Bower (119546)
FARUQI & FARUQI, LLP
10866 Wilshire Boulevard, Suite 1470
Los Angeles, California 90024
Tel: (424) 256-2884
E-Mail: dbower@faruqilaw.com

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO ACQUAVIVA, on Behalf of Himself and All Others Similarly Situated<br><br>PLAINTIFF(S)<br><br>v.<br><br>GNC HOLDINGS, INC., (see attached list for Complete List of Defendants)<br><br>DEFENDANT(S). | CASE NUMBER<br><br>CV12-2542-mmm (FFM)<br><br>**SUMMONS** |

TO:    DEFENDANT(S):

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, __David E. Bower_____, whose address is __10866 Wilshire Blvd., Suite 1470, Los Angeles, California 90024_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __MAR 2 3 2012_____                By: _____
                                                         Deputy Clerk

                                                     *(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (10/11)                                    **SUMMONS**

## <u>COMPLETE LIST OF DEFENDANTS</u>

GENERAL NUTRITION CENTERS, INC.,
CELLUCOR SPORTS NUTRITION,
WOODBOLT DISTRIBUTION, LLC,
WOODBOLT DISTRIBUTION, LTD.,
WOODBOLT MANAGEMENT, LLC
and WOODBOLT INTERNATIONAL

BY FAX

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
MARIO ACQUAVIVA, on behalf of Himself and All Others Similarly Situated,

**DEFENDANTS**
GNC Holdings, Inc., General Nutrition Centers, Inc., Cellucor Sports Nutrition, Woodbolt Distribution, LLC, Woodbolt Distribution, LTD., Woodbolt Management, LLC, and Woodbolt International

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
David E. Bower (119546) of FARUQI & FARUQI, LLP
10866 Wilshire Boulevard, Suite 1470, Los Angeles, CA 90024
Tel: (424) 256-2884, Fax: (424) 256-2885

**Attorneys** (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☒ Yes   ☐ No   ☒ **MONEY DEMANDED IN COMPLAINT:** $ IN EXCESS OF $75,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
15 USC §§2031 et. seq   BREACH OF WARRANTY AS TO USE OF PRODUCTS SOLD BY DEFENDANTS

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☒ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 240 Torts to Land | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

CV12-2542

**FOR OFFICE USE ONLY:**   Case Number: _____
AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)   CIVIL COVER SHEET   Page 1 of 2

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No  ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | NEW YORK |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | DELAWARE; TEXAS |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date March 23, 2012

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program.  (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |